Thomas Jeffrey TACKETT *v.* STATE of Arkansas

CR 91-274                                        822 S.W.2d 834

Supreme Court of Arkansas
Opinion delivered January 13, 1992

*Bynum & Kizer*, by: *Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., *Elizabeth A. Vines*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. In the second trial of this case, the appellant, Thomas Jeffrey Tackett, was convicted of manslaughter and sentenced to six years imprisonment. On appeal, his sole point for reversal is that the trial court erred in denying his motion to suppress evidence taken from the exterior of a vehicle in his possession, as such evidence was obtained by unlawful search and seizure. We disagree, and affirm the conviction and sentence.

On March 24, 1983, Tackett was involved in an automobile accident which resulted in the death of Nancy House, who was riding in the other car. Another passenger, Denise Barrentine, lapsed into a coma as the result of her injuries. The driver of the other car survived. Tackett was charged and convicted of manslaughter, for the death of Ms. House, and leaving the scene of the accident. The conviction was affirmed by the Arkansas Court of Appeals. *Tackett v. State*, 12 Ark. App. 57, 670 S.W.2d 824 (1984).

Subsequently, in 1987, Ms. Barrentine died, and Tackett was charged with manslaughter in her death. He was convicted for this offense as well but, on appeal, this court reversed and remanded for a new trial because evidence of Tackett's prior conviction, arising out of the same incident, was used at his trial. *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989). From the second trial, Tackett brings this appeal.

As mentioned, the automobile accident occurred on March 24, 1983. Later that day, Tackett was taken to the police station and administered his Miranda rights, following which he gave a statement concerning the accident. Although the record is vague, he was then apparently placed under arrest.

Six days later, on March 30, Lieutenant James Hale and Trooper Roger McLemore, without a warrant or express consent from Tackett, removed evidence from the exterior of Tackett's

van,[1] which was located in what apparently was a public parking lot, across the street from the county courthouse. Officer McLemore testified the van was driven there by Tackett's wife on March 24 when Tackett was requested to come to the police station.

While on the parking lot, the officers first photographed the van and then removed the front bumper, the grill, a piece of molding from the front fender, and the front headlight frame. Paint scrapings were also taken from the front of the van. The evidence was later used at trial to establish that Tackett had intentionally bumped the rear end of the other vehicle.

Tackett acknowledges the longstanding principle that one has a lesser expectation of privacy in a motor vehicle than in one's person or residence. *See Cardwell* v. *Lewis*, 417 U.S. 583 (1974) (plurality opinion); *California* v. *Carney*, 471 U.S. 386 (1985). He further recognizes that previous cases allowing the removal, without a warrant, of paint scrapings and other minor pieces of evidence from vehicles have been upheld, where the police had probable cause. *See Cardwell* v. *Lewis, supra* (examination of and removal of paint scrapings from exterior of vehicle); *Watkins* v. *State*, 296 Ark. 345, 756 S.W.2d 907 (1988) (inspection of inner license plate); *Booth* v. *State*, 26 Ark. App. 115, 761 S.W.2d 607 (1989) (removal of paint scrapings and broken glass particles from trailer). Tackett argues, however, that the removal of auto parts from his van was more intrusive, and essentially amounted to an unlawful seizure of the entire car. He further challenges whether the police had probable cause or sufficient exigent circumstances to justify the search and seizure.

The police had ample probable cause to believe the van was involved in a hit-and-run accident. One witness observed a blue and white van, matching the description of Tackett's vehicle, driving several feet behind the other car, moments before the accident occurred. A liquor store owner identified Tackett as having entered her store to purchase beer, briefly before the time of the accident. The driver of the other vehicle told the first

---

[1] The van was actually owned by Tacketts' brother; however, it is undisputed Tackett had permission to drive it and was in control and possession of the van for purposes of standing.

observer on the scene that she had been run off the road by a blue and white van. Officer McLemore went to Tackett's residence following the accident and saw a blue and white van parked in the yard. Tackett admitted to Officer McLemore that he had "seen" an accident on the highway, and accompanied the officer to police headquarters. The van was driven by Tackett's wife to a parking lot across the street from the courthouse. The record is somewhat vague as to the exact character of the lot. Obviously, it was a public area.

As to the existence of exigent circumstances, Tackett points to the case of *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975). There, we invalidated the warrantless seizure of an entire vehicle, parked in the rear of a private residence, because there was no indication the vehicle would have been removed or that the suspect would have had access to it before a warrant could be obtained.

Professor LaFave comments, citing *California* v. *Carney*, *supra*, that the current view is that no warrant is needed, even absent true exigent circumstances. "This is because . . . proceeding without a warrant is justified not merely by the vehicle's 'capability to be quickly moved,' but also by the fact that 'the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' " W. R. LaFave, *Search and Seizure*, Vol. 11 § 7.3(a) (2d Ed. 1987).

In this light, we note that, unlike the vehicle in *Freeman*, the van driven by Tackett was parked in a public area.

> When a vehicle is being used on the highways, or if it is readily capable of such use and *is found stationary in a place not regularly used for residential purposes — temporary or otherwise —* the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily movable by the turn of an ignition key . . . Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling.

*California* v. *Carney*, 471 U.S. at 393 (Emphasis added.) Although it does not specifically address the issue of exigent

circumstances where a vehicle is found in a public place, our Rule of Criminal Procedure 14.1, relating to vehicular searches and seizures, is not inconsistent with *Carney* and with the view expressed by Professor LaFave, and mentions a showing of exigent circumstances only in connection with vehicles located in a private area. The rule provides in relevant part:

> (a) An officer who has reasonable cause to believe that a moving *or readily movable vehicle* is *or contains things subject to seizure may, without a search warrant*, stop, detain, and search the vehicle and may seize *things subject to seizure* discovered in the course of the search where the vehicle is:
>
> (i) on a public way or waters *or other area open to the public*;
>
> (ii) in a private area unlawfully entered by the vehicle; or
>
> (iii) *in a private area* lawfully entered by the vehicle, provided that exigent circumstances require immediate detention, search, and seizure to prevent destruction or removal of the things subject to seizure.

Ark. R. Crim. P. 14.1(a) (emphasis added).

In sum, Tackett had no right to privacy in the exterior of his van, which was parked in a public area; and, where probable cause existed, the search and seizure of the paint scrapings and auto parts was not unreasonable under the Fourth Amendment.

Affirmed.